IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY SUE HALE, | ) | CASE NO.  5:16-cv-00489 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Tammy Sue Hale ("Plaintiff" or "Hale") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner")

denying her applications for social security disability benefits.  Doc. 1.  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate

Judge pursuant to the consent of the parties. Doc. 12.   As explained more fully below, the Court

**AFFIRMS** the Commissioner's decision.

## I.  Procedural History

Hale protectively filed applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") on September 13, 2012.[1]  Tr. 129, 277-281, 282-287,

306.  Hale alleged a disability onset date of September 1, 2012.  Tr. 129, 279, 282.   She alleged

disability due to alcoholism, severe depression, anxiety, and hypertension.  Tr. 225, 237, 310.

Hale's applications were denied initially (Tr. 225-231) and upon reconsideration by the state

agency (Tr. 237-241).   Thereafter, she requested an administrative hearing.  Tr. 242-244.   On

---

[1] The Social Security Administration explains that "protective filing date" is "The date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application."  http://www.socialsecurity.gov/agency/glossary/ (last visited 2/10/2017).

September 9, 2014, Administrative Law Judge Yelanda Collins ("ALJ") conducted an administrative hearing.  Tr. 146-172.

In her October 15, 2014, decision (Tr. 126-145), the ALJ determined that Hale was under a disability but concluded that Hale's substance abuse disorder was a contributing factor material to the determination of disability (Tr. 130).  Thus, the ALJ concluded that Hale had not been disabled under the Social Security Act at any time from the alleged onset date through the date of the decision.  Tr. 130, 140.  Hale requested review of the ALJ's decision by the Appeals Council.  Tr. 124-125.  On January 5, 2016, the Appeals Council denied Hale's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.

## II. Evidence

### A.    Personal, vocational and educational evidence

Hale was born in 1967.  Tr. 139, 279.  She was 47 years old at the time of the hearing.  Tr. 150.  She was living by herself in a duplex.  Tr. 151.  Her boyfriend stayed with her occasionally.  Tr. 151.  Hale's mother and father provide her with assistance, both financially and with other things, such as driving her places and accompanying her to doctor appointments and on errands.  Tr. 152, 157-158-161.   Hale also receives welfare benefits in the form of cash, food stamps and medical coverage.  Tr. 151.  Hale's mother has had custody of Hale's 19 year old son for a number of years.  Tr. 161.  Hale visits with her son and talks with him on the phone.  Tr. 158, 161.  Hale completed a two-year associate's degree in healthcare administration. Tr. 152.   Her most recent paid work attempt was about a year prior to the hearing.  Tr. 153.  She tried to work at Arby's but only worked there two days.  Tr. 153.  A couple of months prior to the hearing, Hale had volunteered at a horse barn.  Tr. 153-154, 167-168.  She volunteered for about a month and a half, 3 days per week for about 2-4 hours at a time.  Tr. 153-154.  Her

therapist had recommended the volunteer work as a form of therapy but Hale indicated that the volunteer work made her more anxious.  Tr. 153-154.  Hale's other past work included work as a cashier/stocker at a produce store during 2003-2006 and as a clothes presser during 2007-2008.  Tr.  154-156, 169-170.

**B.      Medical evidence**

**1.      Treatment history**

On July 8, 2012, Hale was taken to the emergency room at Alliance Community Hospital for suicidal behavior.  Tr. 402-415.   She was found intoxicated lying on the train tracks.  Tr. 402.  Hale was upset about being homeless and losing a child.  Tr. 409.   Hale's drug screen results showed that her alcohol level was 270 mg/dl.[2]  Tr. 413.   After Hale was cleared medically for discharge, she was released into the custody of the county sheriff because of an outstanding warrant.  Tr. 402, 407.   Her discharge diagnoses were suicidal behavior, alcohol abuse, and depression.  Tr. 405.

On August 2, 2012, Hale was seen at Akron General Hospital's emergency room complaining that she felt anxious, upset and depressed.  Tr. 419-430.  She denied suicidal or homicidal ideation.  Tr. 420.  She felt very anxious and was stressed at home.  Tr. 420.  She felt like no one was helping her out.  Tr. 420.  Hale relayed that her boyfriend was not physically abusive but was mentally abusive towards her.  Tr. 420.  Hale's alcohol level was 256.  Tr. 421, 430.  Hale was administered Ativan through an IV to calm her down. Tr. 421.  Hale felt much better after the Ativan and her vital signs improved.  Tr. 421.  Hale's mother was reached and came to pick Hale up.  Tr. 421.  Hale was provided information on a Battered Women's Shelter.  Tr. 421.  Follow up with the psychiatric clinic was recommended and it was recommended that

---

[2] An individual "may show signs of intoxication" with a level in the range of 50-100 mg/dl.  Tr. 413.  A range of 300-500 mg/dl is labeled "comatose level."  Tr. 413.

Hale avoid alcohol and drink plenty of fluids.  Tr.  421.  Hale was discharged with diagnoses of anxiety, depression, and alcohol intoxication.  Tr. 421.

In August 2012, Hale started receiving mental health services through Trillium Family Solutions ("Trillium").  Tr. 456-466.   She was seen for an assessment on August 8, 2012.  Tr. 456-466.  Diagnoses included major depressive disorder, recurrent, severe; alcohol abuse; opioid abuse; and hypertension and anxiety as reported by Hale.  Tr. 464.  Hale was assigned a GAF score of 41.[3]  Tr. 464.  Hale indicated that she might be going to jail for petty theft.  Tr. 464. Counseling was recommended for symptom reduction, stability and medication management. Tr. 464.

On August 21, 2012, while serving a 30-day sentence for theft, a diagnostic assessment was completed through Coleman Diagnostic.[4]  Tr. 432-450.  The assessment mainly contains Hale's subjective reports, including her report that she had three DUI convictions from 1989-1997; she was living alone; she had a suicide attempt about 4 weeks prior; and she was being seen at Trillium, with her next appointment set for September 17, 2012.  Tr. 432.

On September 17, 2012, Hale underwent a psychiatric evaluation at Trillium.[5]  Tr. 452-455.  Hale explained that she had been depressed for a couple of years with her depression getting worse.  Tr. 452.  She had recently been released from jail for theft.  Tr. 452.  On mental

---

[3] As set forth in the DSM-IV, GAF (Global Assessment of Functioning) considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." *Id.* With the publication of the DSM-5 in 2013, the GAF was not included in the DSM-5.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fifth Edition, Arlington, VA, American Psychiatric Association, 2013 ("DSM-5"), at 16.

[4] It appears that Coleman and Trillium may be the same facility or related treatment facilities.  *Compare* Tr. 451 (records request addressed to Coleman Prof Services) *with* Tr. 455 (treatment record sent in response to record request to Coleman Prof Services contains Trillium Family Solutions stamp).

[5] It is not clear who authored the psychiatric evaluation.  Tr. 455.

status examination, it was observed that Hale was thin and unkempt; her demeanor, activity and eye contact were average; her speech was clear; there were no reported delusions or hallucinations; there was no self-abuse or aggressive behavior reported; her thought process was logical; she was mildly depressed and anxious, and her affect was mildly constricted; she was cooperative; her intelligence appeared average; she had limited insight and her judgment needed to improve. Tr. 453-454. Regarding Hale's mental status findings, it was further explained that Hale had significant anxiety and alcohol dependence which might be contributing to her depression. Tr. 454. Diagnoses included depressive disorder, NOS; alcohol dependence; and alcohol induced mood disorder. Tr. 454. A GAF score of 55 was assigned.[6] Tr. 454. Medication was prescribed and the dangers of mixing medication with alcohol were discussed with Hale. Tr. 455.

Hale returned for a follow-up visit at Trillium on December 10, 2012. Tr. 470-471.[7] Hale reported that she felt much better since taking the medication prescribed in September and she had not been drinking. Tr. 470. Hale's mental status findings were generally unremarkable. Tr. 470. Her attention span and concentration and judgment were noted as fair and she had a limited fund of knowledge. Tr. 470.

Hale was seen again at Trillium on February 4, 2013. Tr. 468-469.[8] Hale reported being compliant and doing fine regarding her mood. Tr. 468. Hale indicated a desire to try something different for her anxiety. Tr. 468. Hale's doctor recommended trying citalopram and Vistaril. Tr. 468. Hale's mental status findings were generally normal but her attention and concentration and judgment were fair. Tr. 468. Hale denied any alcohol use for three months. Tr. 468.

---

[6] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR, at 34.

[7] The December 10, 2012, treatment notes are also located in the record at Tr. 552-553.

[8] The February 4, 2013, treatment notes are also located in the record at Tr. 550-551.

On March 22, 2013, Hale saw Dr. Humayun Chughtai, M.D., through Coleman Psychiatry.  Tr. 478-482.  Hale was seen for her mood disorder and alcohol dependence.  Tr. 478.  Hale had been sober and clean for 8 months.  Tr. 478.  Her mood was okay with her medication and her anxiety was under control.  Tr. 478.  Hale had no new psychiatric symptoms.  Tr. 478.  It was noted that Hale had a significant history of alcohol use but Hale reported that she was sober and doing okay.  Tr. 478.  Hale's mental status examination was normal.  Tr. 478.  Hale was cooperative, pleasant, and calm.  Tr. 478.  Her speech was clear, her mood was good, and her affect was full. Tr. 478.  Hale's thought process was logical, her thought content was unremarkable, and she had no suicidal/homicidal ideation.  Tr. 479.  Hale's insight/judgment were good.  Tr. 479.  Dr. Chughtai noted that Hale's risk level was "low."  Tr. 479.  Hale's diagnoses included depressive disorder; alcohol dependence, early full remission (sober for 8 months); and personality disorder, NOS.  Tr. 479-480.  Dr. Chughtai assessed a GAF score of 66.[9]  Tr. 480.  Dr. Chughati indicated that Hale was doing okay for now and recommended that Hale continue on her medication – citalopram and Vistaril.  Tr. 481.

On June 27, 2013, Hale saw Dr. Chughtai for a follow-up visit.  Tr. 473-477.  Hale reported that she had not been taking her medication.  Tr. 473.  She indicated she was feeling down and anxious because she was having some legal problems.  Tr. 473.  She had been charged with breaking and entering and was possibly going to jail.  Tr. 473.  Hale reported that her sleep and appetite were not good but her energy level was okay and she had no hopelessness or suicidal thoughts.  Tr. 473.  Hale indicated she had been sober for about a year.  Tr. 473.  On mental status examination, Hale was casually groomed, irritable and restless.  Tr. 473.  She was

_____

[9] A GAF score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV-TR, at 34.

cooperative, her eye contact was good and her speech was clear.  Tr. 473.  Hale's mood was good and her affect was full.  Tr. 473.  Her thought process was logical and her thought content was unremarkable.  Tr. 474.  Hale had no suicidal or homicidal ideation.  Tr. 474.  Hale's insight/judgment were good.  Tr. 474.  Dr. Chughtai noted that Hale's risk level was "low."  Tr. 474.  Hale's diagnoses remained unchanged from her March 22, 2013, visit, and Dr. Chughtai continued to assess a GAF score of 66.  Tr. 475.  Dr. Chughtai made modifications to Hale's medication by discontinuing citalopram and starting Hale on Venlafaxine ER.  Tr. 476.

On August 9, 2013, Hale sought treatment through Phoenix Rising Behavioral Health ("Phoenix Rising").  Tr. 491, 499-509.  An Adult Diagnostic Assessment was completed.  Tr. 499-509.  Hale reported that she was unhappy with the services at Coleman.  Tr. 499.  She was seeking services for depression and anxiety.  Tr. 499.  Hale stated that she had been unable to work in the past due to alcohol dependence issues and now she was unable to work due to mental health symptoms.  Tr. 499.  Hale indicated that, because of her mental health symptoms, she was having issues with daily tasks, such as getting out of bed and getting dressed.  Tr. 499.  Hale reported that she had last used alcohol 11 months earlier, i.e., September 2012.  Tr. 503.  She had last used meth 14 months earlier and last used marijuana 4 months earlier.  Tr. 503.  Hale's diagnoses were bipolar disorder, NOS, and polysubstance dependence.  Tr. 508.  Her GAF score was 55.  Tr. 508.

Following the diagnostic assessment, on August 28, 2013, Hale underwent a psychiatric evaluation at Phoenix Rising.[10]  Tr. 494-498.  Hale again relayed that she had been dissatisfied with Coleman.  Tr. 494.  She reported a lot of anxiety, depression, shaking, worry, and feeling tense.  Tr. 494.  Hale reported that she was starting a new job that day at Arby's but she did not want to go.  Tr. 494.  She wanted social security.  Tr. 494.  She indicated she did not like being

---

[10] The name of the psychiatric treatment provider at Phoenix Rising is not clear from the records.  *See* Tr. 497, 493.

around people.  Tr. 494.  Hale reported being sober for 11 months.  Tr. 495.  Each day, Hale was smoking 2 packs of cigarettes, drinking two cups of coffee, and drinking 10 glasses of tea.  Tr. 495.  On mental status examination, it was observed that Hale was well groomed and thin.  Tr. 495.  Her appearance was average.  Tr. 495.  Hale's eye contact was average and speech was clear.  Tr. 495.  She was restless.  Tr. 495.  There were no reports of delusions, hallucinations, self-abuse, or aggressive behavior.  Tr. 495.  Hale's thought process was logical.  Tr. 495.  She was depressed and anxious and her affect was constricted.  Tr. 496.  She was cooperative but had a loss of interest.  Tr. 496.  Hale's judgment/insight were fair.  Tr. 496.  As further explanation for the mental status findings, it was noted that Hale exhibited moderate psychomotor agitation with restlessness and fidgeting and noted that Hale had a high level of caffeine consumption.  Tr. 496.  Hale's diagnoses were depressive disorder, NOS, rule out major depressive disorder, recurrent; anxiety, NOS, rule out generalized anxiety disorder; and polysubstance dependence.  Tr. 496.  Her GAF score was 60.  Tr. 496.  Prozac and Vistaril were prescribed to address Hale's symptoms of depression and anxiety.  Tr. 497, 498.   Counseling was recommended along with follow up in four weeks.  Tr. 497.

On September 12, 2013, Hale had her first counseling session at Phoenix Rising with Adrienne Roth, PCC, LCDC-III.  Tr. 538-539.  Ms. Roth observed that Hale was anxious and irritable; she avoided eye contact; she was talkative; and she was crying and shaking.  Tr. 538.  Hale reported that she was continuing her sobriety.  Tr. 538.

Hale saw her psychiatric treatment provider at Phoenix Rising on September 25, 2013.  Tr. 492-493.  Hale reported that she noticed some improvement on the Prozac prescribed in August but was still noticing anxiety, panic and irritability.  Tr. 492.  She stated she had been sober for 11 months but had many cravings.  Tr. 492.  Her sleep was poor.  Tr. 492.  Her appetite

was good but she kept losing weight.  Tr. 492.  Hale felt depressed.  Tr. 492.  She was going to jail for 9 days for a burglary charge.  Tr. 492.  Hale was well groomed and her speech was clear but she had poor eye contact.  Tr. 492.  She exhibited racing thoughts but her thought content was appropriate.  Tr. 492.  Hale's mood/affect was restrictive – her depression and anxiety were continuing.  Tr. 492.  She had no suicidal or homicidal ideation.  Tr. 492.  She was cooperative and alert.  Tr. 492.  Her insight and judgment were adequate.  Tr. 492.  Hale was continuing to drink 1-2 cups of coffee per day but she was cutting down on her consumption of tea.  Tr. 492.  Hale's Vistaril was increased and Seroquel was added for Hale's anxiety and sleep.  Tr. 493, 498.

Hale saw Ms. Roth on October 7, 2013.  Tr. 534-537.  Ms. Roth observed that Hale was anxious.  Tr. 534.  She had some eye contact.  Tr. 534.  She was tearful.  Tr. 534.  Hale reported relapsing – she had had three beers.  Tr. 534.  An Individualized Service Plan ("ISP") was agreed to by Hale.  Tr. 535-537.  Hale's goal, as reflected in the ISP, was to "[m]aintain recovery from all mood altering substances.  Stabilize mood to improve functioning."  Tr. 536.

On October 28, 2013, Hale saw her psychiatric treatment provider at Phoenix Rising.  Tr. 532-533.  Treatment notes from that visit reflect that Hale was less anxious.  Tr. 532.  Hale had been in jail for 10 days.  Tr. 532.  Hale had tried Seroquel but was too sedated.  Tr. 532.  Hale reported symptoms of weight loss/gain, fatigue, mood swings, hot flashes, missed periods, possible menopause.  Tr. 532.  Hale's sleep had improved but her energy level was low.  Tr. 532.  She was eating but losing weight.  Tr. 532.  Mental status examination findings were generally normal other than Hale's mood/affect being noted as "restrictive – anxious mood, but improved."  Tr. 532.  Hale's medications were continued without adjustment.  Tr.  533.

Hale saw her psychiatric treatment provider at Phoenix Rising on November 15, 2013. Tr. 530-531.  Hale relayed that she had been seen at Planned Parenthood and informed that she was in menopause.  Tr. 530.  Hale declined hormones.  Tr. 530.  She also relayed an increase in depression, lack of motivation and recent stress associated with finding her neighbor deceased. Tr. 530.  Hale's sleep was "up & down."  Tr. 530.  She reported increased anxiety and cravings for alcohol but reported that she had abstained.  Tr. 530.  Aside from a restrictive mood/affect and noted depression and anxiety, Hale's mental status examination findings were unremarkable. Tr. 530.  Hale's Prozac and Vistaril were increased to address her ongoing depression and anxiety.  Tr. 531.  Hale declined a suggestion for a stress management group.  Tr. 531.

Hale saw Ms. Roth for therapy on December 10, 2013.  Tr. 528-529.  Hale reported that she was enjoying the work she was doing with horses but it was causing problems between Hale and her boyfriend because Hale needed a ride to work.  Tr. 528-529.  Hale discussed other ongoing conflicts with her boyfriend.  Tr. 528-529.  Hale's son was being released from prison. Tr. 529.  Ms. Roth encouraged Hale to focus on the positive things, i.e., her work and her son. Tr. 529.

On January 3, 2014, Hale saw Ms. Roth (Tr. 526-527) and she also saw her psychiatric treatment provider at Phoenix Rising (Tr. 524-525).   Hale reported to Ms. Roth that she was continuing to have relationship problems with her boyfriend.  Tr. 526-527.  Ms. Roth encouraged Hale to use her coping skills, such as working with animals, to help her stabilize her mood.  Tr. 527.  Hale reported to her psychiatric treatment provider that she continued to have anxiety and irritability over the preceding month, which Hale attributed to stress between Hale and her boyfriend and the holidays.  Tr. 524.  Hale indicated that the amount of sleep she was getting was down because her boyfriend wakes her up when he gets home. Tr. 524.  She indicated that

he was going to being moving out in May.  Tr. 524.  Hale reported her new job at the horse barn.  Tr. 524.  Hale also indicated she was planning on seeing her primary care physician.  Tr. 524.  Hale had had some increase in her energy.  Tr. 524.  Hale had arrived to her appointment in dirty clothes because she came from work.  Tr. 524.  Hale's speech was somewhat pressured; her mood/affect was restrictive and anxious; she was cooperative but had poor eye contact.  Tr. 524.  Hale denied substance abuse.  Tr. 524.  Hale's medication was continued without adjustment.  Tr. 525.  Hale was strongly encouraged to accept treatment for menopause.  Tr. 525.

On January 13, 2014, Hale saw Charles Wallace, M.D., at NC – Affinity Family Physicians.  Tr. 515-518.  Hale complained of depression, hypertension and anxiety.  Tr. 515.  Dr. Wallace noted that Hale had several anxiety/depression symptoms for which she was seeking help.  Tr. 516.  Regarding her reported hypertension, Hale reported dizziness. Tr. 516.  Hale indicated she had avoided medication for her hypertension but she was no longer using alcohol and was willing to try medication. Tr.  516.  Dr. Wallace discussed with Hale that she needed to cut back on her smoking.  Tr. 516.  Dr. Wallace observed that Hale appeared healthy; her insight/judgment was good; she had a normal mood/affect; and she was active and alert.  Tr. 516.  Dr. Wallace started Hale on medication for her high blood pressure.  Tr. 516.  Hale saw Dr. Wallace on January 28, 2014, for follow up regarding her hypertension.  Tr. 511-514.  Dr. Wallace observed that Hale was anxious and agitated.  Tr. 513.  Otherwise, Dr. Wallace's physical examination findings were unremarkable.  Tr. 512-513.  Hale's blood pressure was down to normal with medication but Hale was having some cramping in her right foot.  Tr. 513.  Dr. Wallace noted that Hale did not drink water.  Tr. 512, 513.

On January 31, 2014, Hale saw her psychiatric treatment provider at Phoenix Rising.  Tr. 522-523.  Hale reported that she was continuing to struggle with depression and poor sleep,

which was keeping her up at night smoking.  Tr.  522.  Hale indicated she had been sober for a

year and now did not know what to do with her life.  Tr. 522.  She had no goals and was not sure

she had any hobbies.  Tr. 522.  She indicated that drinking had been her hobby.  Tr. 522.  She

was continuing to work at the horse barn and attend counseling.  Tr. 522.  On examination, it was

observed that Hale was unkempt – she had come to the appointment from work.  Tr. 522.  Her

speech was clear and her thought process was organized and less circumstantial.  Tr. 522.  Her

mood/affect was restrictive and depressed.  Tr. 522.  Her thought content was appropriate; she

was cooperative and alert; and she had no suicidal or homicidal ideation.  Tr. 522.  Hale's insight

and judgment were adequate.  Tr. 522.  Hale denied substance abuse.  Tr. 522.  Trazadone was

added to Hale's medication regimen for her depression and sleep issues.  Tr.  523.  The balance

of Hale's medication was continued for symptom control.  Tr. 523.

On March 20, 2014, Hale saw her psychiatric treatment provider at Phoenix Rising.  Tr.

559-560.  Hale reported that she had quit her job because her job duties had changed.  Tr. 559.

Hale indicated she had felt irritable with an increase in her stress.  Tr. 559.  Hale had not been to

counseling.  Tr. 559.  She was depressed, sad and anxious.  Tr. 559.  She admitted to relapsing

with alcohol when she got out of jail.  Tr. 559.  She was sleeping okay with Trazadone.  Tr. 559.

Her appetite had decreased.  Tr. 559.  On mental status examination, Hale's appearance was fair.

Tr. 559.  Her speech was somewhat pressured and she was fidgety.  Tr. 559.  Her thought

process was circumstantial.  Tr. 559.  Her mood/affect was restrictive, depressed and anxious.

Tr. 559.  Hale was cooperative alert and had no suicidal or homicidal ideation.  Tr. 559.  Her

insight and judgment were adequate.  Tr. 559.  She denied current substance abuse.  Tr. 559.

Hale's Prozac and Vistaril were increased to treat her ongoing depression and anxiety.  Tr. 560.

Hale was reminded about the importance of therapy and keeping her appointments.  Tr. 560.

During her April 17, 2014, visit with her psychiatric treatment provider at Phoenix Rising, Hale reported that she had taken an overdose of her Trazadone the week prior with the intent to die.  Tr. 557.  She was having issues with her boyfriend.  Tr. 557.  Hale indicated that she threw up several times and later realized she wanted to live.  Tr. 557.  She regretted the overdose and denied plans to try again.  Tr. 557.  Since the suicide attempt, Hale reported feeling more hopeful with less depression and anxiety.  Tr. 557.  Hale decided to move out from her boyfriend and live with her son.  Tr. 557.  She indicated that her boyfriend had been her main source of stress for three years.  Tr. 557.  On mental status examination, Hale's appearance was fair.  Tr. 557.  Her speech was less pressured and her thought process was less circumstantial.  Tr. 557.  Hale's mood/affect and depression/anxiety were improved.  Tr. 557.  Hale was cooperative and alert and her insight and judgment were adequate.  Tr. 557.  Hale denied substance abuse.  Tr. 557.  Hale's medications were continued for symptom control.  Tr. 558.  No refills were required.  Tr. 561.

Hale cancelled or did not show for appointments at Phoenix Rising on May 9, 2013, and May 30, 2013.  Tr. 561.

On June 11, 2014, Hale was seen on an urgent basis at Phoenix Rising.  Tr. 555-556.  She had been without her medication for a while and was living with an abusive boyfriend.  Tr. 555.  Hale indicated she did not know where she could go.  Tr. 555.  She stated that her medication helped and wondered if she needed more medication.  Tr. 555.  On mental status examination, Hale's eye contact was poor and she was very fidgety.  Tr. 555.  Hale denied using drugs or alcohol.  Tr. 555.  She stated, "I'll be fine when I get back on my meds."  Tr. 555.  Prozac, Trazadone, and Vistaril were prescribed.  Tr. 561.

13

### 2.     Opinion evidence

On February 18, 2014, psychologist Douglas E. Waltman, Ph.D., LICDC-CS, conducted

a psychological consultative examination.  Tr. 543-547.  Hale admitted to having a history of

drinking problems but indicated she had not used alcohol for the prior 7 months and had not used

street drugs for 18 months.  Tr. 545.  Dr. Waltman observed that Hale was disheveled, dressed in

dirty old clothes, thin and appeared malnourished.  Tr. 546.  He further noted that she had a

ruddy facial complexion; she was restless and avoided eye contact; she sat forward in her chair

looking down but was cooperative with the evaluation.  Tr. 546.  Hale spoke in a raspy voice.

Tr. 546.  Overall, Dr. Waltman indicated that Hale "had the appearance of a chronic skid-row

alcoholic."  Tr. 546.  Dr. Waltman noted that Hale's mood was self-debasing, ashamed and

depressed.  Tr. 546.  Her affect was constricted.  Tr. 546.  Hale expressed discomfort at having to

sit through the interview and she reported being very anxious in social settings.  Tr. 546.  Hale

breathed a sigh of relief at the completion of the interview.  Tr. 546.  Dr. Waltman's diagnoses

were obsessive-compulsive disorder; major depression; polysubstance dependence disorder (in

possible remission); and personality disorder, NOS (borderline, antisocial, obsessive compulsive

features).  Tr. 546-547.   He assessed a GAF score of 35.[11]  Tr. 547.

Dr. Waltman completed a Mental Functional Capacity Assessment, rating Hale's

functional abilities in 20 categories.  Tr. 543.  The rating choices were "not significantly

limited," "moderately limited," "markedly limited," and "not rated."  Tr. 543.  Dr. Waltman

rated Hale "not significantly limited" in the following three categories: (1) ability to remember

---

[11] A GAF score between 31 and 40 indicates "some impairment in reality testing or communication (e.g., speech at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR, at 34.

work-like procedures; (2) ability to understand and remember very short and simple instructions; and (3) ability to carry out very short and simple instructions.  Tr. 543.  Dr. Waltman rated Hale "moderately limited" in the following eight categories: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to sustain an ordinary routine without special supervision; (4) ability to make simple work-related decisions; (5) ability to ask simple questions or request assistance; (6) ability to respond appropriately to changes in the work setting; (7) ability to be aware of normal hazards and take appropriate precautions; and (8) ability to travel in unfamiliar places or use public transportation.  Tr. 543. Dr. Waltman rated Hale as "markedly limited" in the remaining categories of: (1) ability to maintain attention and concentration for extended periods; (2) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) ability to work in coordination with or proximity to others without being distracted by them; (4) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) ability to interact appropriately with general public; (6) ability to accept instructions and respond appropriately to criticism from supervisors; (7) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (9) ability to set realistic goals or make plans independently of others.  Tr. 543.  Dr. Waltman opined that Hale was unemployable.  Tr. 543.

## C.      Testimonial evidence

### 1.       Plaintiff's testimony

Hale was represented at and testified at the hearing.  Tr. 150-168.   Hale provided testimony regarding her personal, educational and vocational history.  Tr. 150-156.

Hale explained that she lost her driver's license about 20 years ago due to various reasons, including DUIs and driving under suspension, so her parents drive her to the places she has to go.  Tr. 152.  Hale does not take public transportation.  Tr. 164.  Hale sees her parents almost every day.  Tr. 157-158.  They either visit at Hale's place or she visits at their place.  Tr. 158.  Hale's mom will come get her so that Hale gets out of the house and is not by herself and so Hale can visit with her son.  Tr. 158.  Also, Hale's mom will take her to doctor appointments and to the grocery store.  Tr. 158.  Hale's mom always accompanies Hale when she goes places because Hale feels better when her mom is with her.  Tr. 158-159.   When her mom is with her, Hale does not get as nervous when she is around other people.  Tr. 159.  Hale just feels safer when her mom is with her.  Tr. 159.  Even if Hale's mom is with her there are times when being around people is too much for Hale.  Tr. 159.   As an example, Hale stated that she has problems in the waiting room at her doctor's office so the staff usually takes Hale back for her appointment right when Hale arrives so she does not have to sit and wait.  Tr. 159.  When Hale is around other people, she feels like they are talking about her.  Tr. 163.   Hale does not interact with other individuals unless they talk to her first.  Tr. 166.  Sometimes people say things that make her mad and she responds by saying things that she should not say.  Tr. 166-167.

Hale's mom usually prepares meals for Hale or she will cook something in the microwave.  Tr. 160.   When asked if Hale thought she could follow a recipe, Hale indicated that

there would be no reason she would want to make a meal.  Tr. 160.  During the day, Hale walks around and repetitively wipes things down.  Tr. 162.  She also repetitively opens and shuts blinds and curtains.  Tr. 163.  She sleeps a lot.  Tr. 162-163, 164.  Hale watches television; usually just sitcoms or the news.  Tr. 160-161.  She talks on the phone with her mom a lot and also talks on the phone with her son.  Tr. 161.  Hale's parents have had custody of Hale's son for five or six years and her son lives with Hale's parents.  Tr. 161.  Hale's mom knew a woman who had miniature horses, which is how Hale found the volunteer opportunity at the horse barn. Tr. 161.

When the ALJ asked Hale why she would not be able to do any kind of work, Hale indicated that she cannot focus or concentrate on one thing and she has a very hard time dealing with people.  Tr. 156-157.   Hale is able to read but sometimes she does not remember or comprehend what she has read.  Tr. 162.  Hale also forgets things like her doctor appointments and medication.  Tr. 162.

Hale takes medication, including Seroquel, Prozac, Trazodone, and Vistaril.  Tr. 165.  At first, Hale's medication seemed like it was helping but she did not think that it was working well anymore.  Tr. 165-166.  Her anxiety was really bad and she felt that she was now more nervous and shaky.  Tr. 165-166.  She was planning on seeing her doctor to discuss her medication.  Tr. 165-166.

Hale indicated that the last time she had alcohol was about a year prior to the hearing, so approximately September 2013, when she was released from jail.  Tr. 157.  She said she had relapsed.  Tr. 157.  She had been in jail for 10 days for receiving stolen property.  Tr. 167.  She had beer, which is usually what she used to drink.  Tr. 157.  Hale indicated it had been quite some time since she had used illegal drugs.  Tr. 157.

### 2.      Vocational Expert

Vocational Expert ("VE") Thomas Nimberger provided a 15-year work summary (Tr.

389) and testified at the hearing (Tr. 168-171).  The VE described Hale's past work, indicating

that Hale's past work as a clothes presser was a medium, unskilled position and her past work as

a retail cashier/stocker was a semi-skilled position performed at the heavy exertional level.  Tr.

169-170.

For her first hypothetical, the ALJ asked the VE to assume an individual who can

perform work at all exertional levels with the following mental limitations: average production

rate, pace or quota (nothing fast or strict); occasional interaction with coworkers and the public; a

setting that does not include conflict resolution, mediation or arbitration, i.e., a low-stress, static

work environment.  Tr. 170.  The VE indicated that the described individual would be able to

perform Hale's past work as a clothes presser.  Tr. 170.  The VE also indicated that there would

be other work that the described individual could perform, including (1) laundry worker, a

medium level, unskilled position; (2) kitchen helper, a medium level, unskilled position; and (3)

packager, a light level, unskilled position.[12]  Tr. 170-171.

For her second hypothetical, the ALJ asked the VE whether there would be jobs available

to an individual who needed redirection through the course of the day or needed to take frequent,

unscheduled breaks throughout the day.  Tr. 171.  Considering the limitations either separately or

together, the VE indicated that there would be no jobs available for the described individual.  Tr.

171.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the

existence of a disability.  "Disability" is defined as the "inability to engage in any substantial

---

[12] The VE provided local and national job incidence data for each of the positions identified.  Tr. 170-171.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[13] . . . .

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[14] claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the

---

[13] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).

[14] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

national economy.

20 C.F.R. §§ 404.1520, 416.920;[15] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the

Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors

to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In her October 15, 2014, decision, the ALJ made the following findings:[16]

1.    Hale meets the insured status requirements through June 30, 2014.  Tr. 131.

2.    Hale has not engaged in substantial gainful activity since September 1, 2012, the alleged onset date.  Tr. 132.

3.    Hale has the following severe impairments: alcohol abuse/polysubstance abuse with alcohol induced mood disorder with depression.  Beginning in 2013-2014, Hale had depression, anxiety and OCD.  Tr. 132. Hypertension is a non-severe impairment.  Tr. 132.

4.    Hale's impairments, including the substance abuse disorders, meet Listings 12.04 and 12.09.  Tr. 132-134.

5.    If Hale stopped the substance abuse, the remaining limitations would cause more than a minimal impact on Hale's ability to perform basic work activities.  Tr. 134.  Therefore, Hale would continue to have a severe impairment of depression or mood disorder with depressed mood. Tr. 134.

6.    If Hale stopped the substance abuse, she would not have an impairment or combination of impairments that meets or medically equals a Listing. Tr. 134-135.

---

[15] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[16] The ALJ's findings are summarized.

7.    If Hale stopped the substance abuse, she would have the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: an average production rate pace/quota; occasional interaction with co-workers and the public in a low stress static work environment with no conflict resolution, negotiation or mediation.  Tr. 135-138.

8.    If Hale stopped the substance abuse, she would be able to perform past relevant work as a clothes presser since the work does not require the performance of work-related activities precluded by the RFC Hale would have if she stopped substance abuse.  Tr. 139-140.

9.    Alternatively, considering Hale's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Hale can perform, including laundry worker, kitchen helper, and packager.  Tr. 139-140.

10.    The substance abuse disorder is a contributing factor material to the determination of disability because Hale would not be disabled if she stopped the substance abuse.  Tr. 140.

Based on the foregoing, the ALJ determined that, because the substance abuse disorder was a contributing factor material to the determination of disability, Hale was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.  Tr. 140.

### V. Parties' Arguments

Hale's sole challenge is to the ALJ's finding that, in the absence of substance abuse, Hale would retain the RFC to perform a range of low-stress, static work activity.  Doc. 13, pp. 11-16. She argues that the ALJ erred in finding Hale's alcohol abuse was a contributing factor material to the determination of disability.  *Id.*

In response, the Commissioner argues that the ALJ's analysis of Hale's substance abuse and conclusion that, absent substance abuse, Hale was able to perform her past relevant work as a clothes presser and other jobs in the national economy was proper and supported by substantial evidence.  Doc. 16, pp. 6-8.

## VI. Law & Analysis

### A. Standard of review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Regulatory requirements when alcoholism or drug abuse is at issue

Under the Contract with America Advancement Act of 1996 ("Welfare Reform Act"), Pub.L.No. 104–121, 110 Stat. 847, 852-53 (1996), codified at 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), "disability benefits cannot be awarded to an individual where drug addiction or alcoholism is a material contributing factor to the finding of disability." *McGlothlin v. Comm'r*

*of Soc. Sec.*, 2013 WL 4544761, * 8 (N.D. Ohio Aug. 27, 2013) (citing *Bartley v. Barnhart*, 117

Fed. Appx. 993, 998 (6th Cir. 2004)).

> The statute provides, in relevant part:

> An individual shall not be considered to be disabled . . . if alcoholism or drug
> addiction would . . . be a contributing factor material to the Commissioner's
> determination that the individual is disabled.

42 U.S.C. § 423(d)(2)(C).

The governing regulation that sets forth the process for evaluating drug addiction or

alcoholism in a disability claim is 20 C.F.R. § 404.1535(b)(1).  In order to determine whether a

claimant's alcohol or drug use precludes them from receiving benefits, the ALJ must first

determine whether a claimant is disabled when the claimant's substance abuse is taken into

account.  20 C.F.R. § 404.1535(a).  Then, the ALJ must determine whether alcohol or drug use

is a contributing factor material to the determination of disability.  *Id.*  Under 20 C.F.R. §

404.1535(b)(1), the key question to be answered in determining whether drug addiction or

alcoholism is a contributing factor material to the determination of disability is whether the

individual would be disabled if she stopped using drugs or alcohol.  20 C.F.R. § 404.1535(b)(1).

A determination that the remaining limitations would not be disabling will result in a finding that

drug addiction or alcoholism is a "contributing factor material to the determination of disability."

20 C.F.R. § 416.1535(b)(2)(i).  Conversely, a determination that the remaining limitations are

disabling will result in a finding that the claimant is disabled independent of his drug addiction or

alcoholism and, therefore, that drug addiction or alcoholism "is not a contributing factor material

to the determination of disability."  20 C.F.R. § 404.1535(b)(2)(ii).

Thus, "if the ALJ completes the standard five-step process . . . and determines that a

claimant is disabled with substance abuse, the ALJ must then proceed to conduct the . . . analysis

outlined above in order to determine if the claimant would still be disabled without the substance abuse." *Sarli v. Colvin*, 2015 WL 1419612, * 18 (N.D. Ohio Mar. 27, 2015) (citing *Underwood v. Comm'r of Social Sec.*, 2010 WL 424970 at *6, * 10 (N.D. Ohio Jan. 22, 2010)).  The burden of proving that substance abuse is not a factor material to the determination of disability rests with the claimant.  *Id.*

**C.** **Substantial evidence supports the ALJ's determination that Hale was not disabled because her substance use was a contributing factor material to the determination of disability**

When taking into account Hale's substance abuse disorders, the ALJ concluded that Hale was disabled.  Tr. 132-134.  In accordance with the regulations, the ALJ then proceeded to determine whether Hale would be disabled if she stopped using drugs or alcohol.  Tr. 134-138.  In making that determination, consistent with the regulations, the ALJ looked to periods of abstinence to determine whether Hale was disabled independent of her substance abuse.  In doing so, the ALJ found that the medical evidence demonstrated that Hale felt better and her symptoms were not as limiting during periods of abstinence.  Tr. 137-138.  For example, December 10, 2012, treatment notes reflect that Hale denied using alcohol and she reported feeling much better.  Tr. 137, 552.  She was observed to be calm and cooperative with no suicidal or homicidal ideation.  Tr. 137, 552.  A couple of months later, on February 4, 2013, Hale denied using alcohol for 3 months.  Tr. 137, 550.  She was casually groomed and cooperative.  Tr. 137, 550.  Her attention and concentration were fair.  Tr. 137, 550.  She had no abnormal thought content and her fund of knowledge was average.  Tr. 137, 550.  On March 22, 2013, Hale reported being sober for 8 months.  Tr. 137, 478.  Her mood was okay and her anxiety was under control with medication.  Tr. 137, 478.  Mental status examination findings were benign.  Tr. 137, 478-479.  She was assessed a GAF score of 66.  Tr. 137, 480.

Hale's challenge to the ALJ's conclusion that she would not be disabled if she stopped using drugs or alcohol is premised upon her contention that the ALJ improperly relied upon Dr. Waltman's opinion to conclude that there was evidence of ongoing substance abuse and that the ALJ incorrectly assessed the credibility of her statements regarding her sobriety during the relevant period.  As discussed below, the Court finds no error in the ALJ's analysis.

As found by the ALJ, during her February 2014 consultative evaluation with Dr. Waltman, Hale reported seven months of sobriety.  Tr. 133-134, 454.  Nevertheless, Dr. Waltman's objective observation was that, overall, Hale "had the appearance of a chronic skid-row alcoholic." Tr. 134, 546.  Also, one of Dr. Waltman's diagnoses was polysubstance dependence disorder (in possible remission).  Tr. 134, 546.   The ALJ concluded that Dr. Waltman's February 2014 consultative opinion reflected ongoing substance abuse rather than sobriety when considered in light of the record as whole.  Tr. 134.   Accordingly, the ALJ considered and relied upon Dr. Waltman's marked limitations when finding that Hale was disabled when taking into account Hale's substance abuse disorders.  Tr. 132-134.   Hale takes issue with the ALJ's finding that Dr. Waltman's opinion reflected ongoing substance abuse and claims that her only alcohol use during the relevant period occurred in late 2013 when she relapsed and had 3 beers.  Doc. 13, pp. 14-15.   Thus, she claims that the ALJ incorrectly relied upon Dr. Waltman's February 2014 opinion to support her conclusion that there were other periods of substance abuse during the relevant period.  Doc. 13, pp. 14-15.   However, Dr. Waltman's observations regarding Hale's appearance at the time of his evaluation is substantial evidence upon which the ALJ properly relied to reach her conclusions regarding substance abuse during the relevant period.  Furthermore, it is not for this Court to reweigh the evidence.  *See*

*Garner*, 745 F.2d at 387 (A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.").

Hale also challenges the ALJ's questioning of Hale's statements regarding the length and periods of her sobriety based on inconsistencies in the records.  Doc. 13, pp. 13-14.  "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Calvin v. Comm'r of Soc. Sec.*, 437 Fed. Appx. 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)).

Hale contends that the record supports her own account and timeline regarding periods of abstinence.  *Id.*  While Hale contends that the evidence supports her own account, the ALJ considered the evidence and questioned the credibility of Hale's statements regarding her sobriety. Tr. 138.  For example, the ALJ noted an incident in April 2014 where Hale attempted suicide by taking an overdose of Trazadone.  Tr. 138.  Hale argues that her drug overdose is different and apart from her history of regularly using of alcohol and should not have been used by the ALJ to assess the credibility of her statements regarding her sobriety and substance abuse. Doc. 13, p. 14.  However, as indicated above, it is not for this Court to resolve conflicts in evidence or try to the case *de novo*.   Furthermore, when evaluating a claimant's credibility and assessing a claimant's RFC, an ALJ is to consider all evidence.  *See* 20 C.F.R. § 404.1529(a).  Thus, the ALJ did not improperly consider evidence regarding the April 2014 overdose when evaluating the credibility of Hale's statements regarding her sobriety following her release from jail.  Moreover, the April 2014 attempted overdose was not the only evidence relied upon by the ALJ to evaluate the credibility of Hale's statements regarding her periods of abstinence.  For

example, as discussed above, the ALJ considered Dr. Waltman's personal observations of Hale's appearance.

Based on the foregoing, Hale has not shown error with respect to the ALJ's reliance upon Dr. Waltman's opinion when reaching conclusions regarding periods of ongoing substance abuse nor has she shown error regarding the ALJ's finding that Hale was not fully credible regarding her sobriety following her release from jail.  Moreover, in light of the evidence, it was reasonable for the ALJ to conclude that, absent her alcohol abuse, Hale could perform the work described in the RFC, including her past work as a clothes presser, as well as other jobs that were available in significant numbers in the national economy.  Accordingly, the ALJ's decision that, if Hale stopped abusing alcohol, she would not be disabled, and that her alcohol abuse was therefore a contributing factor material to a disability determination, is supported by substantial evidence.

## VII. Conclusion

For the reasons set forth herein, the Court **AFFIRMS** the Commissioner's decision.


Dated: February 10, 2017

_____
Kathleen B. Burke
United States Magistrate Judge